[Cite as *Potter v. South*, 2025-Ohio-2812.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


KEVIN POTTER, et al.,            :

        Appellants,           :

                       :

   - vs -                     :

                       :

CHRISTOPHER SOUTH, M.D., et al.,   :

        Appellees.           :

CASE NO. CA2024-02-030

O P I N I O N AND
JUDGMENT ENTRY
8/11/2025


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 07 1256


Statman Harris, LLC, and Alan J. Statman, for appellants.

Rendigs, Fry, Kiely & Dennis, LLP, and C. Jessica Pratt, for appellee, Mercy Health-Fairfield Hospital, LLC.

Calderhead, Lockemeyer & Peschke, and David C. Calderhead and Andrew B. Crane, for appellees, Christopher South, M.D. and GCGA Physicians, LLC dba Ohio Gastroenterology & Liver Institute


# O P I N I O N


**BYRNE, P.J.**

{¶ 1} Kevin and Michelle Potter sued Dr. Christopher South, the Ohio

Gastroenterology and Liver Institute ("Ohio GLI"), and Mercy Health Fairfield Hospital ("Mercy Health") (collectively, "the Defendants") for medical malpractice. The Butler County Court of Common Pleas granted summary judgment to the Defendants on the Potters' claims and the Potters appealed. For the reasons detailed below, we affirm the common pleas court's summary judgment decision.

## I. Procedural History

{¶ 2}   The Potters originally filed a medical malpractice action in the Butler County Court of Common Pleas on June 5, 2020, against one defendant, Dr. South. The complaint alleged that Kevin Potter suffered injuries related to a medical procedure—a celiac plexus block—performed by Dr. South on January 9, 2019, at Mercy Health. The Potters attached to their complaint an "Affidavit of Merit" signed by Dr. Vladimir Kushnir, dated June 2, 2020. The Affidavit of Merit was attached pursuant to Civ.R. 10(D)(2)(a), which provides that when a complaint includes a "medical claim," the complaint "shall be accompanied" by an "affidavit[] of merit" "provided by an expert witness."

{¶ 3}   In October 2020, the trial court issued a pretrial order setting a trial date and multiple discovery deadlines. Among those deadlines, the trial court ordered the Potters to disclose any expert witnesses by June 1, 2021. On August 5, 2021, Dr. South moved for summary judgment on the basis that the Potters "failed to file an expert disclosure, failed to produce expert reports, failed to request an extension of expert deadlines, and, finally, failed again to file an expert disclosure even after Dr. South had identified defense experts." The next day the Potters voluntarily dismissed their complaint.

{¶ 4}   Nearly one year later, on July 21, 2022, the Potters filed a new complaint initiating the action now before us. They again named Dr. South as a defendant, but this time they also named Ohio GLI and Mercy Health as codefendants. The complaint

included multiple claims, all ultimately constituting medical malpractice claims.[1] The Potters again attached Dr. Kushnir's June 2, 2020 Affidavit of Merit to the new complaint.

{¶ 5}   On September 20, 2022, the Potters served answers to Mercy Health's first set of interrogatories. One of those interrogatories asked the Potters to identify "each and every person who you expect to call as an expert witness . . . at trial." In response, the Potters objected, then stated that, without waiving those objections, Dr. Kushnir was an expert they intended to call. They also identified "[a]ny experts listed in Plaintiff's Complaint and/or contained in relevant treatment records."

{¶ 6}   On November 16, 2022, the Potters served answers to Dr. South's and Ohio GLI's interrogatories. As with their answers to Mercy Health's interrogatories, they again identified Dr. Kushnir as an expert they may call at trial and again referred to experts identified in the complaint or treatment records.

{¶ 7}   In January 2023, the trial court issued a pretrial order that required the Potters to disclose any expert witnesses by November 13, 2023. The pretrial order expressly incorporated the terms of a "Pretrial Preparation Packet" that was attached to the pretrial order. The Pretrial Preparation Packet stated that a "party may not call an expert witness to testify unless a written report has been procured from that witness and provided to opposing parties. The report must be supplied no later than 30 days after the deadline for the disclosure of the expert."

{¶ 8}   There was no activity on the docket for the next seven months. During that time, the Potters obtained new trial counsel. On August 8, 2023, the Potters' new trial counsel entered his notice of appearance.

{¶ 9}   On November 17, 2023, after the court's deadline to disclose expert

---

1. The Potters do not dispute this characterization of their claims on appeal.

witnesses had passed, Dr. South and Ohio GLI moved for summary judgment, arguing summary judgment was required because of the Potters' "repeated and dispositive failure to identify any experts," their "failure to produce expert reports," and their "failure to request any additional time from the Court to belatedly identify experts." A few days later, Mercy Health also moved for summary judgment, arguing that the Potters had "failed to produce any expert testimony to establish [Mercy Health] ha[d] deviated from the standard of care and/or ha[d] proximately caused injury to" the Potters. Mercy Health also argued the Potters' complaint against it was barred by the applicable statute of limitations set forth in R.C. 2305.113.

{¶ 10} In response to the pending summary judgment motions, the Potters conceded that they failed to identify their expert within the deadline set by the court, but argued that the Defendants were nonetheless "well aware of the identity and projected testimony" of their expert because they disclosed Dr. Kushnir as their expert in their discovery responses and because they attached his Affidavit of Merit to their complaint. They also argued that the scheduling order was overlooked because of their change in counsel and their counsel's other commitments. They further argued that summary judgment would be a "very harsh sanction" not appropriate in the circumstances.

{¶ 11} The trial court set the summary judgment motions for a hearing on January 22, 2024. By this time the deadline to produce expert reports, which was set by the scheduling order's incorporation of the terms of the Pretrial Preparation Packet, had expired. The Potters' new trial counsel did not appear for the hearing but arranged for substitute counsel to appear in his place. During the hearing, the trial court detailed the procedural history of the case and permitted the parties the opportunity to clarify or place further information on the record. The following exchange occurred:

THE COURT: This was originally a case, its first filing that was

- 4 -

before Judge Pater. So I . . . saw that there was still no expert report filed on the [the Potters'] part. That was due on November 13th, 2023. As of today's date, we're still without that report or any request to [extend] the disclosure date for the [Potters]. We've really had no filings or communication from [the Potters' new trial] counsel following any of the motions that have been filed by [the Defendants'] counsel. With that being the history, the Court set this date . . . following the fact that we still have no disclosure of experts on the [Potters'] part.

So with that procedural background, which counsel, you're free to clarify anything the Court has misstated or glossed over, but I've indicated that we would give counsel the opportunity to place on record anything they wish to place on record prior to the Court's ruling.

. . .

THE COURT: Does [the Potters' substitute attorney] wish to address the issues we have before us today?

[THE POTTERS' SUBSTITUTE ATTORNEY]: No, Your Honor. I am told it was fully briefed, and I have nothing to add.

{¶ 12} After the Defendants' counsel then made statements referring to their respective summary judgment arguments, the trial court stated, "It's the Court's intention, at this particular juncture, to dismiss the matter." On January 29, 2024, the trial court issued a written entry granting the Defendants' motions for summary judgment. The court merely stated in its short, one-paragraph written entry that the Defendants' motions were "well-taken" and that the Defendants were "entitled" to summary judgment. The court provided no further explanation.

{¶ 13} The trial court provided no substantive written analysis in support of its summary judgment decision. However, the court appears to have agreed with Defendants' arguments related to the Potters' failure to identify an expert and to have agreed with Mercy Health's statute of limitations argument because it found their motions for summary judgment to be "well-taken." This conclusion is also supported by the fact

that, at the hearing on the motions for summary judgment, the court verbally stated its intent to dismiss the complaint immediately after counsel for Defendants referred back to their written summary judgment motions.

{¶ 14} The Potters appealed, raising a single assignment of error for review.

## II. Appeal

{¶ 15} The Potters' sole Assignment of Error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AGAINST THE POTTERS' CLAIMS AND CAUSES OF ACTION, AND DISMISSING THE ACTION BELOW.

{¶ 16} The Potters make several arguments in support of their assignment of error. First, the Potters argue that the trial court erred in granting the Defendants' summary judgment motions because "extraordinary circumstances" prevented the disclosure of their expert. The Potters assert that their new trial counsel "was not provided" with the scheduling order when he appeared in the case, substituting for their previous counsel, and further maintain that their new trial counsel was overwhelmed with other matters leading him to overlook the scheduling order. Second, though the Potters concede that they did not "formally" disclose an expert, they argue that Dr. Kushnir was their expert. The Potters assert that they informed the Defendants that Dr. Kushnir was their expert in written discovery, as well as by attaching Dr. Kushnir's Civ.R. 10(D)(2)(a) Affidavit of Merit to their complaint. The Potters also maintain they provided a written discovery response stating they would use "[a]ny experts listed in [the Potters'] Complaint and/or contained in relevant treatment records." They further argue that the Defendants were not prejudiced and that summary judgment was a "very harsh sanction" in these circumstances and "would not be proportional to the extent of the violation." Finally, the Potters argue that their claims against Mercy Health were not barred by the applicable statute of limitations.

## A. Standard of Review

{¶ 17} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.), citing *Roberts v. RMB Ents., Inc.*, 2011-Ohio-6223, ¶ 6 (12th Dist.). "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). Pursuant to Civ.R. 56, a court may grant summary judgment only when "(1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 18} The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Vesper v. Otterbein Lebanon*, 2021-Ohio-4545, ¶ 23 (12th Dist.); *Touhey v. Ed's Tree & Turf, L.L.C.*, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 1996-Ohio-107, ¶ 17. The moving party "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 21 (2d Dist.), citing *Dresher* at ¶ 17. Once the moving party meets this burden, the nonmoving party has a reciprocal burden requiring it to present evidence to demonstrate that there is some issue of material fact yet remaining to be resolved. *Smedley v. Discount Drug Mart, Inc.*, 2010-Ohio-5665, ¶ 11 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine

triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

**{¶ 19}** An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently, and without deference to the trial court's decision. *Davis v. Royal Paper Stock Co., Inc.*, 2022-Ohio-4135, ¶ 56 (12th Dist.); *Wulf v. Bravo Brio Restaurant Group, Inc.*, 2019-Ohio-3434, ¶ 15 (12th Dist.).

### B. Analysis

**{¶ 20}** In this case, we must apply the summary judgment analysis described above to determine (1) whether no genuine issue of material fact exists that would preclude summary judgment on the Potters' medical malpractice claims, (2) whether the Defendants are entitled to judgment as a matter of law with respect to those claims, and (3) whether the evidence can only lead reasonable minds to a conclusion that is adverse to the Potters. *Spitzer*, 2021-Ohio-1913, at ¶ 6.

**{¶ 21}** A plaintiff seeking to establish a medical malpractice claim must prove, by a preponderance of the evidence, that the injury complained of (1) "was caused by the doing of some particular thing or things that a physician of ordinary skill, care, and diligence would not have done under like or similar conditions", *or* (2) "was caused by the failure or omission to do some particular thing or things that such a physician would have

done under like or similar conditions," *and* (3) "that the injury complained of was the direct and proximate result of the physician's doing or failing to do such particular thing or things." *Stewart v. Vivian*, 2016-Ohio-2892, ¶ 93 (12th Dist.), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976), paragraph one of the syllabus.

{¶ 22} We have held that expert testimony is necessary to prove the elements of medical malpractice when those elements are beyond the common knowledge and understanding of the jury. *Johnson v. Erbeck*, 2023-Ohio-3402, ¶ 27 (12th Dist.), citing *Adams v. Kurz*, 2010-Ohio-2776, ¶ 11 (10th Dist.). "This occurs where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." (Cleaned up.) *Id.*, quoting *Rose v. Tievsky*, 2021-Ohio-3051, ¶ 47 (2d Dist.), quoting *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503 (1964), paragraph one of the syllabus. In such cases, expert testimony is necessary to demonstrate "(1) the applicable standard of care within the medical community, (2) the defendant breached that standard of care, and (3) the breach of the standard of care proximately caused the plaintiff's injury." *Schumacher v. Patel*, 2023-Ohio-4623, ¶ 20 (10th Dist.). If a plaintiff fails to present such expert testimony, then "a court may enter summary judgment in favor of the defendant-physician." *Culp v. Olukoga*, 2013-Ohio-5211, ¶ 70 (4th Dist.), quoting *Armeni v. Aromatorio*, 2012-Ohio-1500, ¶ 34 (7th Dist.); *Taylor v. McCullough-Hyde Mem. Hosp.*, 116 Ohio App.3d 595, 599-600 (12th Dist. 1996); *Korreckt v. Ohio Health*, 2011-Ohio-3082, ¶ 12 (10th Dist.).

{¶ 23} The Potters do not dispute that expert testimony was necessary to establish the elements of medical malpractice in this case. The question in this case, then, is whether the Potters could have offered such expert testimony if the matter proceeded to trial. To answer this question, we must turn to Civ.R. 26(B)(7), which sets forth various requirements related to expert witnesses. Two of those requirements are relevant to this

appeal: the disclosure requirement and the written report requirement. We will examine them in turn.

### 1. The Expert Disclosure Requirement

{¶ 24} Civ.R. 26(B)(7)(a) provides that "[a] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under [the Rules of Evidence concerning expert testimony]." The rule says "must," so expert witness disclosure is mandatory, not optional. *See State v. Noling*, 2018-Ohio-795, ¶ 64 (reasoning that "shall" means "must," so it imposes a mandatory obligation).

{¶ 25} In the case before us, the Potters concede in their appellate brief that they did not "formally disclose[]" their expert "pursuant to the Scheduling Order." They also admit that "Without question, [the Potters] failed to file the necessary disclosure of witnesses." However, they point out that they twice identified Dr. Kushnir as their expert in response to the Defendants' written interrogatories. They also point out that Dr. Kushnir was made known to the Defendants when they attached his Affidavit of Merit to their complaint. The Potters further point out that this identification came prior to the deadline to identify expert witnesses. Based on these facts, the Potters argue that the Defendants were on notice of the identify of their expert prior to the close of discovery and that the Defendants as a result were not prejudiced by their failure to formally disclose their expert pursuant to Civ.R. 26(B)(7)(a).

{¶ 26} It is not clear why the Potters state that they failed to "formally disclose[]" their expert to the Defendants. Identifying Dr. Kushnir as their expert in their discovery responses was sufficient. *See* Civ.R. 26(A) (describing the methods of obtaining discovery); Civ.R. 26(B)(7)(a) (only requiring disclosure of expert witnesses in discovery and not requiring any particular method of disclosure). As a result, to the extent the trial court found that the Potters failed to disclose an expert, it was incorrect. The Potters

satisfied the expert disclosure requirement of Civ.R. 26(B)(7)(a).

{¶ 27} But this is not the end of our analysis; we must also determine whether the Potters satisfied the expert report requirement.

### 2. The Expert Report Requirement

{¶ 28} Civ.R. 26(B)(7)(b) imposes an affirmative obligation on a party that seeks to use an expert witness to exchange its expert's *report* with the other parties. The rule states that "The reports of expert witnesses expected to be called by each party *shall* be exchanged with all other parties." (Emphasis added.) Civ.R. 26(B)(7)(b). Moreover, the rule specifically requires that "The parties *shall* submit expert reports and curricula vitae in accordance with the time schedule established by the Court." (Emphasis added.) *Id.* This language makes clear that the disclosure of an expert report is mandatory. *Noling*, 2018-Ohio-795, at ¶ 64.

{¶ 29} The expert report disclosure rule's mandatory nature is backed up by a very specific consequence spelled out in Civ.R. 26(B)(7)(c). That rule provides that, except with regard to certain experts not at issue in this appeal, "a party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel."[2] Civ.R. 26(B)(7)(c). This report must meet stringent requirements, including disclosing "a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify," and "the compensation for the expert's study or testimony." *Id.* The content of a report limits the expert's scope of testimony, because "An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report." *Id.*

---

2. The exception referenced above concerns healthcare providers "who ha[ve] provided medical, dental, optometric, chiropractic, or mental health care" and who would testify "as to matters addressed in the healthcare provider's records." Civ.R. 26(B)(7)(d). Dr. Kushnir did not provide health care to Kevin Potter so this exception to the expert report requirement does not apply to him in this case.

{¶ 30} On appeal, the Potters neither admit nor deny that they failed to produce an expert report compliant with the requirements of Civ.R. 26(B)(7). At most, they imply that Dr. Kushnir's Affidavit of Merit, filed as an attachment to their complaint, is an appropriate substitute for an expert report because the Affidavit of Merit gave the Defendants "knowledge of Dr. Kushnir's expected testimony." But the Potters fail to develop this argument or provide any authority in support. They also fail to point to any specific language in the Affidavit of Merit that would support the conclusion that the Affidavit of Merit was in fact an expert report. "As we have consistently held, it is the appellant's burden to demonstrate error on appeal by presenting an argument supported by citations to legal authority and facts in the record." *State v. Hopkins*, 2025-Ohio-2102, ¶ 30 (12th Dist.), citing App.R. 16(A)(7). Further, "[i]t is not this court's duty to 'root out' or develop an argument that can support an assigned error, even if one exists." *State v. Phipps*, 2024-Ohio-4832, ¶ 13 (12th Dist.), citing *Lebanon v. Ballinger*, 2015-Ohio-3522, ¶ 27 (12th Dist.). The Potters have failed to meet their burden under App.R. 16. *Hopkins* at ¶ 31. We therefore disregard the Potters' perfunctory, undeveloped argument that Dr. Kushnir's Affidavit of Merit constituted an expert report under Civ.R. 26(B)(7)(c).[3]

{¶ 31} Without recourse to Dr. Kushnir's Affidavit of Merit, the Potters can point to no expert report produced in compliance with Civ.R. 26(B)(7). Because the failure to produce an expert report bars a party from calling that expert as a witness, *see* Civ.R.

_____

3. Some appellate courts have suggested that it might be possible to construe an affidavit of merit that contains certain language as an expert report. See *Kinasz v. Diplomat Healthcare*, 2016-Ohio-2949, ¶ 12 (8th Dist.); *Schumacher*, 2023-Ohio-4623, at ¶ 26. But the Potters failed to cite these cases and failed to present any argument regarding why Dr. Kushnir's Affidavit of Merit might constitute an expert report under the standards set forth in those cases. The Potters also failed to address how the Affidavit of Merit would constitute an expert report when the Affidavit of Merit did not include any information regarding Dr. Kushnir's financial compensation for preparing the Affidavit of Merit, as required by Civ.R. 26(B)(7)(c). *See Haworth v. Rowan*, 2023-Ohio-3816, ¶ 20 (2d Dist.) (determining failure to disclose compensation in an affidavit of merit is a reason an affidavit of merit does not qualify as an expert report). Nor did the Potters address Civ.R. 10(D)(2)(d), which states that "An affidavit of merit . . . shall not otherwise be admissible as evidence . . . ," and whether this language prevents an affidavit of merit from being considered an expert report. It is not our role to develop these arguments for the Potters. *Phipps*, 2024-Ohio-4832, at ¶ 13.

26(B)(7)(c), and because the absence of expert testimony bars the Potters from establishing the elements of medical malpractice, the trial court correctly granted summary judgment to the Defendants. *See Culp*, 2013-Ohio-5211, at ¶ 70; *Taylor*, 116 Ohio App.3d, at 599-600; *Korreckt*, 2011-Ohio-3082, at ¶ 12; *Armeni*, 2012-Ohio-1500, at ¶ 34; *Hitch v. Thomas*, 2010-Ohio-3630, ¶ 41 (6th Dist.). That is, the record supports the trial court's decision, as there is no evidence in the record indicating that Dr. South or any of the Defendants breached any standard of care that constituted the direct and proximate cause of Kevin's injuries. *Johnson*, 2023-Ohio-3402, at ¶ 27 (expert testimony is necessary in medical malpractice cases when elements of those the claims are beyond the common knowledge and understanding of a jury).

{¶ 32} Notably, the Potters were given numerous opportunities to produce an expert report. The initial case was filed in June 2020, and the trial court issued a pretrial order requiring the disclosure of expert witnesses by June 1, 2021. The Potters missed that deadline and voluntarily dismissed their complaint. The current action was filed in July 2022, and the trial court issued a new pretrial order requiring the disclosure of expert witnesses by November 13, 2023 and expert reports by December 13, 2023. The trial court specifically warned that an expert witness would not be permitted to testify "unless a written report has been procured. . . and provided to opposing parties." Despite this warning, the Potters again missed the deadline, leaving them with no expert report to substantiate their medical malpractice claims. *Johnson* at ¶ 27.

{¶ 33} But the Potters, as in their memorandum opposing the motions for summary judgment, argue that their new trial counsel was not provided the scheduling order and failed to meet the applicable deadline because of a busy schedule. This argument fails because "[t]he court speaks through its docket, and attorneys bear the responsibility of checking the docket to keep themselves informed of the progress in their case." *Pewitt v.*

*Roberts*, 2005-Ohio-4298, ¶ 7 (8th Dist.). It is simply no excuse that the Potters' new trial counsel was too busy to learn about the deadline to disclose the Potters' expert. When the Potters' new trial counsel entered his appearance in August 2023, the Potters still had ample time to produce an expert report. But new trial counsel did not make the necessary disclosure, nor did he file a request for additional time. When provided the opportunity to explain and argue the case at the summary judgment hearing, the Potters' new trial counsel did not appear. The substitute attorney did not explain the failure to produce an expert report and only stated, "I am told it was fully briefed, and I have nothing to add." The Potters' attempt to shift blame for their failure to produce an expert report from themselves to the trial court lacks merit.

{¶ 34} Finally, the Potters' argument that summary judgment is a "very harsh sanction" in the circumstances of this case is without merit. Here, summary judgment is not a "sanction" for bad discovery conduct, but a legal conclusion the trial court was obliged to reach because the Potters' own conduct (that is, failing to produce an expert report) left them incapable, as a matter of law, of proving all of the elements of their medical malpractice claims.

{¶ 35} For these reasons, the trial court did not err in granting summary judgment to the Defendants.

### 3. Statute of Limitations

{¶ 36} As noted above, the Potters raise a secondary issue in this appeal: whether the applicable statute of limitations barred their medical malpractice claim against Mercy Health. But our resolution of the above issue concerning the Potters' failure to produce an expert report renders the statute of limitations issue moot and it need not be addressed. *Withers v. Mercy Hosp. of Fairfield*, 2010-Ohio-6431, ¶ 53 (12th Dist.), citing App.R. 12(A)(1)(c).

{¶ 37} Accordingly, we overrule the Potters' sole assignment of error.

### III. Conclusion

{¶ 38} Upon review of the record, we find the trial court did not err by granting summary judgment to the Defendants.

{¶ 39} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robert A. Hendrickson, Judge

/s/ Mike Powell, Judge